## Case No. 6,617.

### HOLLINGSWORTH v. DUANE.

[Wall. Sr. 141.][1]

Circuit Court, D. Pennsylvania. May 26, 1801.

ATTACHMENT FOR CONTEMPT — EVASION OF SERVICE.

A rule upon a party to show cause why an attachment should not issue against him for a contempt, must be served personally: but if he evades the service, or other circumstances render it proper, the court will order that service at his last place of abode shall be deemed sufficient.

[Cited in U. S. v. Anonymous, 21 Fed. 768.]
[Cited in Shattuck v. State, 51 Miss. 50.]

[The defendant in the above case had been attached for contempt, and in justification of his acts of contempt had cited an article aimed at him which had been published by Caleb P. Wayne on the day following the trial (Case No. 14,997). A rule to show cause why he should not be attached for contempt was laid on Caleb P. Wayne (Id. 16,654), the service of which Mr. Wayne evaded.]

[1] [Reported by John B. Wallace, Esq.]

Mr. Dallas now stated that copies of the rule granted yesterday upon Mr. Wayne [Case No. 16,654] had been made out, and every diligence used to serve one personally on him; that failing in this, he had caused one to be left at his usual place of abode, with his housekeeper. These facts were made out by affidavits, which further stated it as the belief of the deponents, that Wayne concealed himself with a view to evade the service. Upon this case, he moved that the court would proceed on the rule to show cause, as if there had been a personal service proved. He admitted that the usual practice was to serve the rule personally; but this was not essentially necessary, upon a rule to show cause, which was designed as merely a notice for the defendant to come in, if he chose it, and answer to a motion for an attachment. In Jones v. Griffiths, 4 Term R. 464, it was said by Lord Kenyon, "that in every case of the service of a notice, leaving it at the dwelling-house of the party, had always been deemed sufficient, and that in some instances of process, as a subpoena out of chancery, or quo minus out of the exchequer, the same service was sufficient." He further says: "In general, the difference is between the process to bring the party into contempt, and a notice of this kind, the former only of which need to be personally served on him." A rule on which the contempt is grounded, must appear to have been personally served. If a party is proceeded against for disobeying a subpoena or any rule of court, you must, on moving for an attachment, prove personal service of the subpoena or rule; otherwise the court will not grant an attachment; because there can be no contempt unless the party was served with the process; and the court would never proceed to adjudge one in contempt for not obeying a rule, or order, where it does not appear the rule or order was seen by the party. But here, the contempt is, for publishing a piece reflecting on the party in the cause. This must be proved to the court by the prosecutor, before they will order an attachment; and indeed has already been proved on obtaining the rule to show cause. This latter rule then, is only in the nature of a notice to come in and answer to a charge of contempt; and to clear himself of an attachment if he can. It is merely e gratia of the court, and requires no other service than other notices in the course of a cause, as of trial, &c. This was not a "process to bring the party into contempt," as expressed by Lord Kenyon in the case cited; but a notice to clear himself of it, if he could. All the cases turn on the service working the contempt. In Rex v. Smithies, 3 Term R. 351, and Rex v. Edyvean, Id. 352, the question turned on service of the rule, against which the contempt was committed; not on the notice to bring in the party to answer or excuse himself. In the latter case, Lord Kenyon said, that in general, personal service was necessary before a party could be brought into contempt; yet in that case, the act of parliament dispensed with it, by making public notice sufficient. He cited 2 Hawk. P. C. 230, § 37; 4 Bl. Comm. 286, 287; 1 Strange, 185,—to establish his proposition, that a rule to show cause against an attachment, is sufficiently served, if left at the party's place of abode.

Mr. Wallace was about to answer; but Mr. Dickerson objected to any counsel appearing for Wayne, because he was not in court. He said that as Wayne did not appear, the proceeding was necessarily ex parte. Either he had received the notice or he had not: if he had received it, then no objection could lay to the prosecution's going on, if he had not received it, or the service at the house was not evidence of it, then for counsel to be heard for him, would be preposterous, as they could have no authority from a party who was supposed to know nothing of the proceeding. He cited 2 Hawk. P. C. 214, where it is said, "that a party who is ordered to attend the court on a rule against an attachment, should regularly appear in proper person and not by attorney; as also must every one against whom an attachment is granted."

CURIA. Neither the reasoning nor the case is to the purpose. You suppose notice to have been served on the defendant, and are moving to attach him. He or his counsel happens to be before the court, and says that he has had no notice of this motion; you say you left notice at his house: they answer, this was no notice to him; and that produces a question of law. There is no such dilemma as is supposed by Mr. Dickerson. Your authority is that on a rule the party should appear in person. But this is taking the point about the service of the rule for granted. When the rule is served, then, to be sure, the defendant should regularly attend in person: but the question now is, whether a rule has been served. However, to end all difficulty, we will hear Messrs. Chauncey and Wallace as amici curiae: we are desirous of ascertaining what the rule of law is on the point.

Mr. Wallace contended, that leaving a rule at the house of a party, in case of an attachment, was not sufficient service. This was a summary and penal proceeding; and the writ of attachment, a high prerogative writ. The court might, indeed, in particular cases, grant it immediately, and leave the party to exonerate himself on interrogatories. But in this case, they had ordered a rule upon the party to show cause. This was meant for his benefit, and the intent was, and so is the practice, to serve the rule personally. In Tidd, Pr. 143, it is said: "The rule to show cause is drawn up for a particular day; previous to which it should be duly served. To bring a party into contempt, a copy of the rule must be personally served, and the original at the same time showed to him: in other cases, the same degree of strictness is not required in the service of the rule, but it is sufficient,

without showing the original, to leave a copy of it with any person representing the party at his dwelling-house," &c. He considered the practice as settled, that every rule and notice, tending to bring the party into contempt, or in proceedings of contempt, must be personally served.

Dallas, in answer to Tidd, said that it was only a recognition of the law which he had laid down; and related to the rule, for the disobedience of which, the attachment was moved for; that Tidd, in the margin, referred to 3 Term R. 351, the case cited by him.

Before TILGHMAN, Chief Judge, and GRIFFITH, Circuit Judge.

GRIFFITH, Circuit Judge. The question is, whether the rule in this case has been duly served on the defendant. If the party conceals himself, that may be a ground for our directing service at his place of abode, to be sufficient. But that must be under a new rule with a special direction. I am of opinion, that the service in this case is not sufficient. The defendant is a third person, and no party to the cause. An application was made to bring him before the court for a contempt; and in order that he might defend himself, the court direct a rule on him to show cause against the motion. The party moving for the attachment, says, "It was left at his house, with his housekeeper." Is this service on the party? If we proceed, how do we know that we are not proceeding against him without a summons? It is a dictate of natural justice, that a party should have notice. There may be, and, indeed, are cases in which presumptive evidence of notice may be sufficient. Some of these are by statute; some by rules of court; some by practice. But on motions for attachment, I have always understood the law to be, that proof must be made of delivery of the notice to the party, or of its coming to his knowledge. In Rex v. Edyvean, 3 Term R. 351, Lord Kenyon's expression is, "That in general, personal notice is necessary before a party can be brought into contempt." In Jones v. Griffiths, 4 Term R. 464, the court seem to make no distinction, in cases of contempt, between the manner of serving the process on which the contempt is grounded, or of the rule calling on the party to answer the contempt: and in reason there is no distinction; for it may be certainly presumed that a rule to show cause, or a notice, by being left at the last place of abode, came to the defendant; why may not leaving a rule of court, on which the contempt arises, in the same way furnish the same legal presumption of its coming to his knowledge? In all my practice, I have never known the court to proceed on an attachment, without proof of personal service of the notice, or rule to show cause;

12FED. CAS.—24

or proving that it actually came to the defendant's knowledge. This is a safe and good rule; and conformable to justice and equity. I think the motion must be refused; and the prosecutor put to prove a personal service, unless dispensed with by the terms of the rule.

TILGHMAN, Chief Judge. There seems some reason for the distinction made by the counsel for the motion. Certainly, where you move the court for an attachment, because a party has disobeyed or contemned its process, or order, you must prove that such process or order was personally served. But where that proof is first made, and the case is such, that instead of an attachment at once, the court will give the party a rule to show cause, before they award an attachment; whether that rule, which is in the nature of a summons or notice, requires a personal service, or may be presumed to come to the party's knowledge by leaving it at his place of abode, is somewhat a different question. And yet, I cannot find that the distinction taken on this motion is any where recognized; but it seems rather to be the practice, and the idea to be collected from the books, that all notices on proceedings in attachments are to be personally served. This is a received notion in ordinary practice; and is, certainly, most conformable to the reason of the common law, which is ever opposed to an ex parte proceeding. Unless there is proof that the party did receive the notice, it would be proceeding against him unheard. There are cases, in which, by statute, or by received practice, presumptive service of rules or other process of the court, is deemed sufficient. But I am inclined to think that rules to show cause against an attachment, require personal service, or proof of the actual reception by the party. This is the most safe and satisfactory principle. If, indeed, it should appear that the party evades the service, or other circumstances render it proper, the court would direct the leaving it at his place of abode to be good service (see 2 Hawk. P. C. 230, note 3); and as in this case, pains have been taken to serve the rule personally, and the affidavits state that he secretes himself; we will make such an order if prayed for. But as the rule has not been served personally, the court cannot proceed further upon it.

BASSETT, Circuit Judge, was absent.

Mr. Dallas then moved for a new rule upon Wayne to show cause on the first day of October sessions next; with an order that service at the party's last place of abode, should be deemed sufficient: which was granted.